## A98A1013. JAMES v. THE STATE.
### (504 SE2d 533)

McMurray, Presiding Judge.

Defendant Pete James, a/k/a Terrell Howard and Depetro Antonio James, was charged in an indictment with a single count of violating the Georgia Controlled Substances Act in that on May 13, 1993, he did "unlawfully sell cocaine. . . ." The evidence adduced at his jury trial, including defendant's incriminating written statement, revealed the following:

On May 13, 1993, Cynthia J. Ford, an undercover agent with the Dougherty County Police Department, attached to the Albany-Dougherty Drug Unit, had a confidential informant ("CI") drive her to various areas in Thomaston, Georgia. "On that day, [Agent Ford] was attached with a wire, [i.e.,] a transmitter. It picks up voices and the Narcotics Task Force is able to hear what's going on so they'll know [Agent Ford's location], what's going on, in case anything happens. . . . The CI was driving and we went over to East Walker Street, and as we drove along, there's a set of brick apartments, and we drove down that street and the defendant yelled at . . . the car, and the CI stopped. The defendant walked over to the car, and he asked us what we wanted. And the informant said he wanted a ten, and when he said a ten, he was indicating drugs. The defendant placed his right hand inside of the car and opened his hand. Inside of his hand, he had several small purple plastic bags, plastic ziplock[-type] bags. And inside of the bags was what appeared to be crack cocaine or rock cocaine. And he said they were 20s. So [Agent Ford] picked out one and gave him [defendant] two tens for it." At that time, defendant "said his name was Terrell Howard."

This sale occurred "about ten minutes after 5 p.m. and it was still daylight." After she completed her purchase and left the area, Agent Ford "called the investigators from the Narcotics Task Force, gave them a description of the subject, what he was wearing, where he was at, and about ten minutes after [she] bought the drugs, [Agent Ford] turned the drugs over to [Agent] Partridge." Defendant was described to other investigators as a "young black male, light skin, about 5'8", wearing a black and white cap, light shirt and black dress pants." Agent Ford was positive of her in-court identification of defendant as "the person that said he was Terrell Howard that night." The only other people around that particular area "were people down at the other end of the apartments."

After receiving Agent Ford's description of the seller, Undercover Agent Ken Partridge, with the City of Thomaston Police, assigned to the Narcotics Task Force, "rode by and got a look at the [defendant]. . . ." Agent Partridge also made an in-court identification of defendant as the suspect found fitting Agent Ford's description of the

seller. Agent Partridge confirmed there were no "other people around that fit that description." Specifically, Agent Partridge "saw [defendant,] Mr. James[,] there, the only light-skinned black male there." It took Agent Partridge "[p]robably one minute . . ." to get to the site of the drug sale. Katherine Lee, a Georgia Bureau of Investigation forensic chemist with the State Crime Laboratory in Macon, analyzed "the off-white compressed material [and determined it] is positive for cocaine and the weight is less than one gram." Captain William Hosely, Jr., Chief Investigator for the Upson County Sheriff's Office identified State's Exhibit 4 as defendant's written custodial statement, wherein defendant admitted: "I, Depetro James, did sell Ramone Carter and a girl $20 crack cocaine, East Walker. [signed:] Depetro James."

The jury found defendant guilty as charged. His motion for new trial as amended was denied, and this appeal followed. *Held*:

1. Defendant's second enumeration contends the trial court erred in denying defendant's motion in limine and in failing to strike at trial the identification of defendant by Agent Ford. He argues "her identification of [defendant] as the perpetrator was based solely on an impermissibly suggestive show-up. . . ." The factual basis for this assertion is that Agent Ford saw a single photograph of defendant as she examined the State's file looking for her own notes and previous statements and also saw him outside of a courtroom sometime after the May 13, 1993 drug sale in question.

(a) The pretrial "motion in limine" is captioned "MOTION FOR PRETRIAL HEARING TO DETERMINE ADMISSIBILITY OF ANY ACTS ALLEGED BY THE STATE TO BE SIMILAR TRANSACTIONS," and nowhere urges that Agent Ford's identification of defendant as the drug seller is impermissibly tainted. "Grounds for reversal which may be considered on appeal are limited to those which were argued before the trial court. [Cit.]" *State v. Browning*, 209 Ga. App. 197, 198 (2) (433 SE2d 119). Consequently, whatever ruling the trial court made in response to that motion for a pretrial hearing on similar transactions evidence, there was certainly no error therein, based on the grounds urged in this enumeration.

(b) During defendant's cross-examination of Agent Ford, she confirmed she had "been through training school and got some training in identification," including the use of photographic lineups; that the procedure for a photographic lineup was to do an array of six to eight pictures of people whose features are fairly the same; and that proper procedure "[i]f you're going to do a photo lineup, . . . you don't give [the witness just] one photo," because, in Agent Ford's opinion, a single photo "makes it very suggestive. . . ." Based on her limited opportunity to view the actual culprit during the two-minute drug sale, alleged discrepancies between Agent Ford's testimony and that

of Agent Partridge, and the circumstances whereby Agent Ford saw defendant in a courtroom hallway and also his photograph in a file, defendant argues Agent Ford's in-court identification of him as the drug seller was impermissibly tainted by improper pre-trial exposure.

"In exercising its discretion whether an in-court identification was tainted by a pre-trial defect, the trial court must examine the totality of the circumstances. *Neil v. Biggers*, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1972). The court should consider: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by the witness; and (5) the length of the time between the crime and [the] confrontation. Id. In evaluating these factors, the trial court is the trier of fact and must judge the credibility of the witnesses and the weight and conflict in the evidence." *Lowe v. State*, 264 Ga. 757, 758 (2) (452 SE2d 90). Where there is evidence to support the trial court's determination, an appellate court will not disturb that ruling. Id.

In our view, the circumstance that Agent Ford is a trained investigator who was, during the brief time of the sale, professionally focused on the identity of the perpetrator, is an adequate evidentiary basis for admitting her subsequent in-court identification testimony, even though she inadvertently saw and recognized defendant in a courthouse hall, and even though she was exposed to a single photograph of defendant while examining the State's file. Although defendant refers to this event as an impermissible photo lineup, there is no evidence to support a conclusion that Agent Ford intended to do anything more than refresh her recollection with her own notes when she examined the file. Thus, we do not accept defendant's characterization of this circumstance as an impermissible showup, i.e., done for the purpose of identifying a suspect. Furthermore, there is no evidence that Agent Partridge, within one minute of the sale, saw any person *but* defendant who matched Agent Ford's contemporaneous description of the seller. The trial court did not abuse its discretion in denying defendant's motion to strike the in-court identification testimony of Agent Ford.

2. Defendant's first enumeration complains of the denial of his motion for directed verdict of acquittal. Although he argues in his brief that the identification of him as the seller by Agents Ford and Partridge was impermissibly suggestive and therefore insufficient to sustain the jury's verdict, the sole ground urged before the trial court in support of this motion was that the State "failed to prove the essential elements of this crime, and specifically the identification of this defendant in this case has not been proven."

"The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. In the case sub judice, the in-court identification of defendant as the seller is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the jury's verdict that defendant is guilty, beyond a reasonable doubt, of selling crack cocaine as alleged in the indictment. *Flemister v. State*, 229 Ga. App. 8 (1) (492 SE2d 907); *Rauls v. State*, 209 Ga. App. 101, 102 (2) (432 SE2d 677). Moreover, the eyewitness identification of defendant in the case sub judice is corroborated by defendant's own custodial statement, in which he identified himself as the seller of crack cocaine to Ramone Carter (the suspected CI) and a girl (Agent Ford) on East Walker Street. "The defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. The defendant is the most knowledgeable and unimpeachable source of (any incriminating) information about his past conduct, and one can scarcely imagine evidence more damaging to his defense than his own admission of guilt." (Citations and punctuation omitted.) *Collins v. State*, 229 Ga. App. 210, 211 (1) (a) (493 SE2d 592). The trial court correctly denied defendant's motion for directed verdict of acquittal, on the ground that the State had failed to supply proof of the identity of the perpetrator. *Humphrey v. State*, 252 Ga. 525, 526 (1), 527 (314 SE2d 436).

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED JULY 16, 1998.

*William A. Adams, Jr.*, for appellant.

*William T. McBroom III, District Attorney, Mark M. Irvin, Assistant District Attorney*, for appellee.